UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ROSEMARY BELGROVE                          CIVIL ACTION

VERSUS                                     NO. 26-332

FIDELITY BANK                              SECTION: "J"(4)

## ORDER AND REASONS

Before the Court is *Defendant Fidelity Bank's Motion to Dismiss* **(Rec. Doc. 9)** pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Pro se Plaintiff, Rosemary Belgrove, opposed the motion (Rec. Doc. 11), and Fidelity filed a reply memorandum (Rec. Doc. 12). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that Fidelity Bank's motion to dismiss should be **GRANTED**.

## FACTS AND PROCEDURAL BACKGROUND

In February of 2025, Plaintiff, Rosemary Belgrove, submitted an online application requesting pre-approval for $1.5 million in "mortgage credit" to NOLA Lending Group, which was a division of Fidelity Bank at the time. (Rec. Doc. 3, at ¶ 5). In her First Amended Verified Complaint, Plaintiff alleges that she expressly denied authorization for Fidelity to obtain her consumer credit report. Plaintiff brought this action against Fidelity in February of 2026, claiming violations of the Fair Credit Reporting Act ("FCRA") and the Equal Credit Opportunity Act ("ECOA"). Her primary allegations are that Fidelity accessed her consumer credit report

without her authorization, and that when Fidelity decided to deny her loan application, Fidelity failed to provide her with a lawful adverse action notice. Plaintiff contends that Fidelity's actions caused her concrete injury consisting of "(a) invasion of privacy interests protected by federal statute; (b) impairment of credit opportunity; and (c) loss of statutory consumer protections intended to govern and constrain credit decision-making." *Id.* at ¶ 20.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. The court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (citation omitted).

2

## DISCUSSION

## A. CLAIM UNDER THE FAIR CREDIT REPORTING ACT

"Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007) (citing 15 U.S.C. § 1681). The Act primarily governs the conduct of consumer credit reporting agencies, but it also prohibits any person or entity from using or obtaining a consumer credit report for an impermissible purpose, as defined by the statute. 15 U.S.C. § 1681b. To state a claim for impermissible obtainment or use of a credit report, a plaintiff must allege "(i) that there was a 'consumer report' within the meaning of the statute; (ii) that the defendant used or obtained it; and (iii) that the defendant did so without a permissible statutory purpose." *Migliore by Migliore v. Vision Solar LLC*, 160 F.4th 79, 91 (3d Cir. 2025) (internal quotation marks and citation omitted), *cert. denied sub nom.*, *Migliore v. Sunlight Fin. LLC*, No. 25-1194, 2026 WL 1717969 (2026).

In this case, the parties agree that Defendant accessed and used Plaintiff's "consumer report, so it is the third element that forms the basis of this dispute, although Plaintiff does not necessarily challenge Defendant's purpose for accessing her consumer credit report. In her complaint, Plaintiff simply alleges that when she submitted her application for pre-approval for a $1.5 million mortgage loan, she expressly denied authorization for a credit report but that Defendant accessed her report nonetheless. Plaintiff's complaint is sparse in terms of facts, and it remains unclear to the Court what damages she has sustained as a result of this alleged

breach of the FCRA. But, notwithstanding these issues, Defendant Fidelity correctly points out that Plaintiff has failed to state a plausible claim under the FCRA upon which relief can be granted.

The FCRA delineates the permissible purposes for accessing a consumer's credit report. 15 U.S.C. § 1681b. In part, the statute authorizes a consumer reporting agency to furnish a report to an entity, such as a lender, when the agency reasonably believes that the entity "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to . . . the consumer." § 1681b(a)(3)(A). Here, Plaintiff acknowledges that she "submitted an online mortgage pre-approval application to Defendant . . . seeking approximately $1.5 million in mortgage credit." (Rec. Doc. 3, at ¶ 5). However, Plaintiff also contends that on the application, she chose not to authorize Defendant to perform a credit check. Specifically, when asked whether she granted "credit authorization," Plaintiff clicked "no." Conversely, Defendant maintains that "[o]nce Plaintiff submitted the pre-approval request, Fidelity had a permissible purpose to access her credit report in order to determine whether Plaintiff qualified for a mortgage loan" (Rec. Doc. 9-1, at 12), and that Fidelity did not need Plaintiff's consent or authorization for this permissible purpose under the FCRA.

As a clear and established matter of law, Fidelity is correct. The FCRA provides for two types of civil liability. Under § 1681n, civil liability attaches only when a person obtains a consumer credit report "under false pretenses or knowingly without a permissible purpose." § 1681n. In this case, Plaintiff does not allege that Defendant

4

pulled her credit report under false pretenses, nor does she claim that Fidelity did so without a permissible purpose. In fact, Fidelity's purpose in obtaining Plaintiff's credit report is one that is expressly recognized by the FCRA: Fidelity intended to use the information in connection with a credit transaction involving Ms. Belgrove and the extension of credit to her. Although Ms. Belgrove cites § 1681n in her complaint, she has not alleged any facts that would make such a claim plausible on its face. Indeed, accepting all of Ms. Belgrove's facts as true and drawing all inferences in her favor, the Court finds that it would be impossible for her to plead a plausible claim that Fidelity obtained her credit report under false pretenses or knowingly without a permissible purpose.

Plaintiff also brings a claim under Section 1681o, which applies when a person negligently fails to comply with the Act. However, Plaintiff is mistaken as to what the FCRA requires concerning compliance. When a lender, such as Fidelity, obtains a consumer's credit report for a permissible purpose, that lender has complied with the FCRA, regardless of whether the consumer authorized the lender to pull the report. In her First Amended Verified Complaint, Plaintiff acknowledges that Fidelity obtained her TransUnion credit report for the permissible purpose of a credit transaction, so the fact that she clicked "no" when asked to provide authorization for a credit report is irrelevant under the statute. (Rec. Doc. 3, at ¶¶ 23–26).

Next, should the Court decide to grant Defendant's motion to dismiss, Plaintiff seeks leave to amend her complaint. When considering a motion to dismiss, a district court should freely grant leave to amend the complaint unless amendment would be

futile. *See, e.g., United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 270 (5th Cir. 2010). "An amendment is futile if it would fail to survive a Rule 12(b)(6) motion." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citing *Briggs v. Mississippi*, 331 F.3d 499, 508 (5th Cir. 2003)). Here, the statute is clear that a lender may permissibly obtain a consumer's credit report in connection with a credit transaction. Plaintiff concedes that she completed an application for pre-approval of a $1.5 million mortgage loan from Defendant. Under these circumstances, and as a matter of law, Plaintiff could not possibly amend her claim under the FCRA such that it would survive a Rule 12(b)(6) motion because a "showing of a permissible purpose is a complete defense." *Rhodes v. McCall-N Ltd*, No. 21-cv-04221, 2022 WL 3349229, at *2 (S.D. Tex. July 27, 2022) (quoting *Stonehart v. Rosenthal*, No. 01 Civ. 651, 2001 WL 910771, at *3 (S.D.N.Y. Aug. 13, 2011)). Therefore, dismissal of Plaintiff's claim under the FCRA is warranted, and the Court finds that Plaintiff's request for leave to amend her FCRA claim should be denied.

## B. CLAIM UNDER THE EQUAL CREDIT OPPORTUNITY ACT

Next, Plaintiff brings a claim against Defendant under the Equal Credit Opportunity Act. However, this claim lacks merit and any conceivable basis in law or fact.

When considering a Rule 12(b)(6) motion to dismiss, a court must restrict its analysis "to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing Fed. R. Civ. P. 12(b)(6)). Typically, if the movant presents "matters outside the pleadings" and the

court chooses not to exclude them, the court must treat the motion as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(b)(6). There are narrow exceptions to this rule, however. For one, the Fifth Circuit has held that "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (quoting *Collins*, 224 F.3d at 498–99); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

As an attachment to its motion to dismiss, Defendant Fidelity included an email between one of its Senior Loan Officers and Bryan Erthyn Belgrove, Plaintiff's husband and agent, concerning a link that the Loan Officer had sent to Mr. Belgrove. (Rec. Doc. 9-2, at 29). When Mr. Belgrove asked the Loan Officer what the link was, she explained that it would take him to the documents that were sent concerning Ms. Belgrove's loan application, *id.* at 30, which comprised the statement of denial, which Defendant also attached to its motion, *id.* at 25–27. This statement constitutes the adverse action notice that forms the basis of Ms. Belgrove's complaint under the ECOA.[1] 15 U.S.C. § 1691(d), (e); 12 C.F.R. § 1002.9. Accordingly, this document that Defendant attached to its motion to meets the Fifth Circuit's criteria to be considered part of the pleadings: (1) Plaintiff references this adverse action notice, or alleged lack thereof, in her complaint; and (2) this notice is central, and in fact crucial, to

---

[1] Plaintiff acknowledges that she consented to electronic communications in connection with her loan application. Therefore, Defendant was legally authorized to provide the adverse action notice electronically. 12 C.F.R. § 202.4(d)(2).

Plaintiff's complaint. Therefore, the Court will consider this document in ruling on Defendant's Rule 12(b)(6) motion to dismiss.

The Equal Credit Opportunity Act prohibits any creditor from discriminating against an applicant "on the basis of race, color, religion, national origin, sex or marital status, or age . . . ." 15 U.S.C. § 1691(a)(1). Furthermore, the statute requires that "[w]ithin thirty days . . . after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application." § 1691(d)(1). Moreover, when the creditor has taken an "adverse action" against the applicant, including denying or revoking a credit offer, the creditor must provide a statement of reasons, in writing, for the adverse action. § 1691(d)(2). This statement must include "the specific reasons for the adverse action taken." § 1691(d)(3). A provision in the Code of Federal Regulations further specifies the form that the ECOA notice and statement of reasons should take. 12 C.F.R. § 1002.9(b).

Here, Defendant provided a Statement of Credit Denial, Termination, or Change on February 20, 2025, approximately four days after Plaintiff submitted the online application, which was well within the thirty days required by statute. Further, the statement contains a section entitled "Part I. Principal Reason(s) for Credit Denial, Termination, or Other Action Taken Concerning Credit," followed by a two-column list of potential reasons and check boxes. (Rec. Doc. 9-2, at 25). On the statement concerning Plaintiff's loan request, the following specific reasons were selected: limited credit experience, collection action or judgment, delinquent past or present credit obligations with others, unable to verify employment, unable to verify

income, and inadequate collateral, or more specifically, value or type of collateral is not sufficient. *Id.* Additionally, on the third page of the statement, Defendant included a notice that recites the language suggested by the federal regulation almost verbatim, which would be considered legally compliant because the statute requires only that the creditor include a notice that is "substantially similar" to the language contained in the regulation. 12 C.F.R. § 1002.9(b).

Moreover, in the statement, Defendant explained that its "credit decision was based in whole or part on information obtained in a report from the consumer-reporting agency listed below" and then informed Plaintiff of (1) her rights under the Fair Credit Reporting Act and (2) her right to a free copy of the credit report if requested within sixty (60) days. Then, the statement contains a list of the consumer-reporting agencies on whom Defendant relied in making its credit decision, along with dates of the reports, score ranges, and key factors that adversely affected the applicant's credit scores. In sum, Defendant complied with the Equal Credit Opportunity Act's requirements to the letter.

In her opposition to Defendant's motion to dismiss, Plaintiff urges the Court not to consider the adverse action notice that Defendant attached to its motion because "Plaintiff disputes whether the February 20, 2025 text link or electronic communication was clearly presented, opened, received, or understood as a legally compliant adverse-action notice." (Rec. Doc. 11, at 4). Furthermore, in response to Defendant's allegation that Plaintiff's husband-agent requested clarification from Defendant's Senior Loan Officer concerning the text link, Plaintiff contends that this

"request for clarification about the purpose of the text link does not establish, as a matter of law, that Plaintiff received a complete and compliant adverse-action notice." *Id.*

Plaintiff is technically correct that her agent's questions about the text link do not establish that Defendant provided an ECOA-compliant adverse action notice. However, Defendant has supplied the Court with the actual adverse action notice to which the text link led, and this notice fully complies with the requirements of the ECOA. Whether this notice, which was sent and accessible electronically, was "clearly presented, opened, received, or understood" as being legally compliant is beside the point. The ECOA does not require a creditor to ensure that a consumer open a link or understand an adverse action notice; instead, the Act simply requires that the creditor provide the consumer with one. Here again, Plaintiff has failed to state a claim to relief under the ECOA that is plausible on its face, and as a matter of law, amendment of this claim would prove futile.

Plaintiff correctly acknowledges the well-established principle that the Court must evaluate her complaint "with the liberal construction owed to pro se filings." (Rec. Doc. 11, at 2 (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007))). However, equally well-established is the principle that when a court accepts a pro se plaintiff's allegations as true and construes them liberally but still "cannot draw the reasonable inference that the [defendant] is liable for the misconduct alleged," the plaintiff has failed to plead sufficient facts to make a plausible claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470–71 (5th Cir. 2016)

(internal quotation marks omitted). This is one of those cases, and therefore, the Court finds that Defendant's motion to dismiss should be granted. Moreover, the Court concludes that amendment of the complaint would be futile because Plaintiff will be unable to state a plausible claim on which relief can be granted "as no amendment of the facts will establish any liability against Fidelity under either the FCRA or the ECOA." (Rec. Doc. 12, at 2).

## CONCLUSION

Accordingly,

**IT IS ORDERED** that *Defendant Fidelity Bank's Motion to Dismiss* **(Rec. Doc. 12)** is **GRANTED**, and Plaintiff's claims against Defendant are hereby **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 21st day of July, 2026.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE